Young *et al. v.* Gentis.

Filed June 8, 1893.

_____

No. 654.

## Young et al. *v.* Gentis.

PRACTICE.—*Failure to Reply to Affirmative Pleas.—Procedure.—Waiver.* —Where a defendant goes to trial upon affirmative pleas, without having demanded a reply, he will be deemed to have waived it, and the cause will proceed as if such pleas had been controverted by general denial.

PLEADING.—*Duplicity not Apparent in Complaint, but Developed by Evidence.—Practice.—Instructions to Jury.*—Where it is apparent from a complaint, in an action for damages, that the cause is based upon a single trespass, but it develops from the evidence that the action is founded upon separate trespasses, or causes of action, the liabilities of the respective parties should be limited and defined by the instructions.

DRAINAGE.—*Lateral Drains.—Flowage from Lands not Assessed.*—Water falling or flowing by natural means upon lands assessed for the

construction of a public ditch may be conducted into such ditch by means of lateral drains, but this right does not extend to lands not so assessed. Neither may one whose land has been assessed collect, by artificial means, water from lands not so assessed, and discharge such water in any considerable quantities into the public ditch.

INSTRUCTIONS TO JURY.—*Weight of Evidence and Credibility of Witnesses.* —Where an instruction upon the weight of the evidence and the credibility of witnesses was, in substance, that the jury is the exclusive judges of the credibility of the witnesses, and in weighing the evidence they are authorized to consider the relationship of the witnesses to the parties; their interest in the result of the suit; their apparent candor and intelligence; and other matters of like character, so far as they were in evidence or observable from the demeanor of the witnesses upon the stand; such instruction was proper, and did not invade the province of the jury.

SAME.—*Drainage.—Overflow of Ditch.—Measure of Damages.—* In an action for damages to land because of a wrongful over-taxing of the capacity of a public ditch, an instruction which stated the measure of damages to be the value of the crop destroyed, and the difference in the value of the land before and after the trespass, when permanent damages were sustained, was a correct statement of the law.

From the Wells Circuit Court.

*J. H. C. Smith, E. R. Wilson* and *J. J. Todd,* for appellants.

*L. Mock* and *A. Simmons,* for appellee.

CRUMPACKER, C. J.—The complaint upon which appellee recovered below alleges, in substance, that he is the owner and in possession of the south half of the southwest quarter of section one, township twenty-seven north, range eleven east, in Wells county, and appellant Young is the owner and in possession of the south half of the southeast quarter of said section; that a public highway runs along the east line of Young's land, which is also the line dividing Rock Creek and Lancaster townships in said county; that a number of years ago there was a public ditch established and constructed, commencing upon the highway at the northeast corner of Young's tract and running thence west along the north

line thereof to a point within a few rods of the northwest corner, thence southwest across the corner of said tract, entering appellee's·land a few rods south of his northeast corner, and continuing thence to the southwest for some distance, thence northwest, leaving appellee's land east of the northwest corner and continuing in a northwesterly course several miles to the Wabash river; that for several years there has been a ditch coming from the northeast, which empties into said public ditch at a point a few rods east of the northwest corner of Young's land; that the public ditch, below the point where it leaves appellee's land, is cut, in a great measure, through solid rock, and has all of the fall that can be given it without an expense greatly disproportionate to the benefits which would result therefrom; that appellants Flemming and Wilson own separate pieces of land east of Young's tract, and for years there has been a ditch running from a point several miles to the southeast to said highway, striking it about fifty rods south of the northeast corner of Young's tract, and running thence "a little south of west," on the land of Young, to a point within twenty rods of his west line, thence south to the Wabash river, the waters of which ditch never ran across appellee's land nor into said public ditch, until the acts hereinafter complained of; that on the 2d day of January, 1890, the appellants, unlawfully, and without right, constructed a "ditch and dam" for the distance of fifty rods along the west side of the highway, connecting the ditch from the southeast with the public ditch, and diverting the water from the former into said public ditch in large quantities, which water had theretofore been accustomed to flow off in another course, and in consequence of such unlawful diversion, the capacity of the public ditch was overtaxed where it ran through appellee's land, and said land was overflowed and damaged, and twenty acres of wheat

growing thereon, of the value of $100, was entirely destroyed; that appellants wrongfully and without right cut a ditch, from the ditch across Young's land, to the east line, and for ten rods across appellee's land, causing large quantities of water to flow thereon which did not flow across his land before, so that ten acres of said land were submerged and rendered worthless; that by reason of said wrongful acts appellee was damaged in the sum of one thousand dollars, for which he demands judgment.

Appellants Fleming and Wilson joined in their answer, and Young answered separately. Special answers were filed requiring a reply, but it is not shown by the record that any was filed. The cause was tried, however, upon the theory that the special pleas were denied, and the court so instructed the jury.

It is a rule of practice in this State that where the defendant goes to trial upon affirmative pleas without having demanded a reply, he will be deemed to have waived .it, and the cause will be considered as if the pleas had been controverted by the general denial. *Buchanan* v. *Berkshire Life Ins. Co.*, 96 Ind. 510.

There was a verdict in favor of appellee for $200, against all of the appellants, upon which judgment was rendered.

Assuming that the action was brought under section 2154, R. S. 1881, counsel for appellants insist that the court erred in overruling the demurrer to the complaint. That section provides that if any person shall willfully obstruct any public ditch, or divert the water therefrom, he shall be fined, and also be liable for all damages resulting from his unlawful act.

The wrong charged in the complaint consists of the unlawful diversion of large quantities of water collected by artificial means, from its proper channel, into the public ditch, and thus causing the land of appellee to be

overflowed and injured. It is manifest that the complaint is not based upon section 2154, *supra,* but upon the common law doctrine that one has no right to collect bodies of surface water upon his own premises, and by means of a ditch or other artificial conduit, discharge such water upon the land of another, where it was not accustomed to flow by nature, nor to divert the flow of a watercourse, either natural or prescriptive, from its rightful channel. *Wilkinson* v. *Applegate,* 64 Ind. 98; *Templeton* v. *Voshloe,* 72 Ind. 134.

The complaint is not demurrable.

It is also maintained that two separate and distinct trespasses are alleged, and the court erred in overruling appellants' motion to separate the complaint into paragraphs. The theory of the complaint is that the water in the ditch coming from the southeast, which had flowed across Young's land and thence south to the Wabash river, was interrupted by the ditch along the highway and conducted to the public ditch, also that a channel was cut from the ditch upon Young's land, conducting the water upon and across appellee's land at another point. It was all part of one plan or system, designed to drain appellants' several tracts through appellee's land by means of the public ditch, and in contemplation of law was one wrong, which was properly charged in a single paragraph of complaint. If the evidence discloses separate and independent wrongs, the liability of the respective parties should have been limited and defined by the instructions.

Complaint is next made by appellant Young, respecting the action of the court in sustaining the demurrer to his second, third, and fourth paragraphs of answer. The record discloses that no exception was taken to the ruling of the court upon either paragraph, but leave was granted to amend them all.

An amended second paragraph was subsequently filed by him, to which a demurrer was overruled, so it is obvious that no question was reserved for decision upon the demurrer.

A motion to strike out a number of interrogatories submitted to the jury to be answered, by the request of appellee, was overruled, and without entering in detail into a discussion of the various questions argued by counsel, this court, without hesitancy declares, that no material error occurred in the action of the trial court in that particular, as the interrogatories are of such a character that no harm could have resulted to appellants by the adverse ruling.

The jury found in answering the interrogatories that appellee owned the land described in the complaint as belonging to him, and Young owned the eighty acre tract just east and between appellee's land and the highway upon the township line; that about fourteen years ago a public ditch, known as "Hurricane Ditch," was established and constructed from a point on the highway at the northeast corner of Young's land, along the north line thereof to within a few rods of his northwest corner, thence to the southwest across the corner of Young's land and across appellee's said tract upon a circuitous route to the southwest, thence to the northwest, leaving said tract near the northwest corner, and thence continuing to the northwest for several miles to the Wabash river.

Hurricane ditch was established by public authority, and the lands of appellee and of appellants Young and Fleming were assessed for benefits arising from its construction, but the surface water from a portion of Fleming's land, and Wilson's land, and a large tract of other land lying to the east and south had its natural outlet

across Young's tract about fifty rods south of Hurricane ditch, thence south to the Wabash river.

· Some time after the construction of Hurricane ditch, a ditch coming from the northeast, known as the "Woodward ditch," was constructed, discharging its flowage into Hurricane ditch a few rods east of the northeast corner of appellee's land, and thereafter the capacity of Hurricane ditch was not sufficient to carry off all of the water flowing into it, and appellee's land was frequently overflowed.

Upon his petition, an enlargement of Hurricane ditch was made by public authority, from a point near the center of his land towards its mouth. From the point of such enlargement to its outlet the ditch thereafter became known as the "Gentis ditch."

Appellee's land was assessed for its construction but the lands of appellants were not, and such enlargement served to drain appellee's land to a condition suitable for cultivation for ordinary agricultural purposes.

A large tract of land lying to the east and southeast, including Wilson's and a portion of Fleming's land, was drained by the ditch coming to the highway from the southeast, and the natural outlet of the water was across Young's land south of the Hurricane ditch and thence in a southerly direction to the river. The flowage from this scope of country had never been through Hurricane ditch nor across appellee's land, but in January, 1890, appellants opened a ditch along the west side of the highway conducting the water from the southeast ditch, north, and discharging it into Hurricane ditch in such quantities that the capacity of both Hurricane and Gentis ditches was over-taxed, and appellee's land was overflowed and his crops destroyed.

It is argued with candor and earnestness that Young and Fleming were entitled to judgment upon the special

findings of the jury, because their lands were assessed, and contributed to the construction of Hurricane ditch, and might lawfully be drained therein by means of lateral ditches.

It may be conceded that water falling or flowing by natural means upon lands assessed for the construction of a public ditch may be conducted into such ditch by means of lateral aqueducts, but this right does not extend to lands not so assessed. Nor may one whose land has been assessed collect thereon by artificial means water from lands not assessed and discharge such water in any considerable quantities into the public ditch.

It appears, from the facts found by the jury, that the drainage from a large scope of country entirely outside of the lands assessed for the Hurricane ditch, was collected into a channel and discharged into such ditch, causing it to overflow its banks.

The natural outlet for such drainage was along another course, and it was unquestionably a wrong to divert it from its natural course and turn it into the public ditch in such quantities as to cause an overflow and injury to property. There was no error in allowing judgment upon the general verdict.

Evidence was admitted upon the trial, over appellant's objections, showing the construction of ditches conducting water into the main ditch from the southeast, which was turned into Hurricane ditch by the ditch along the highway. The point is made against this evidence that the wrong complained of was the ditch along the highway, and the evidence should have been confined to that. The issues have a much broader scope than counsel are willing to concede. The condition of the country to the east and southeast, the quantity of flowage therefrom, and the character and plan of the drainage, were perti-

nent subjects of inquiry as showing the source and quantity of water wrongfully discharged in the public ditch.

The claim is next made that the verdict is not supported by sufficient evidence. The evidence is voluminous and it would be impracticable to set out even the substance of it. There was considerable conflict among the witnesses upon several material questions, but the verdict is not without ample support upon every essential proposition, and can not be disturbed upon this ground.

It is finally insisted that error occurred in giving and refusing instructions. A large number were given; and, taken as a whole, they very clearly defined the issues between the parties, and declared the rules and principles of law applicable thereto, as far as justified by the evidence. The cause was submitted to the jury upon the theory that those of appellants whose lands were assessed for the construction of Hurricane ditch had the right to conduct the water falling and collecting thereon by natural causes into such ditch, but they did not have the right to engage with others in collecting, by means of artificial drains, the water from upper lands not assessed for the construction of such ditch, and discharge such water therein in such quantities as to cause it to overflow its banks and submerge appellee's land.

The jury were instructed that the measure of appellee's damages was the value of the crop destroyed and the difference in the value of the land before and after the trespass, when permanent damages were sustained.

Upon the subject of the weight of the evidence, the jury were informed that they were the exclusive judges of the credibility of the witnesses, and in weighing the evidence they were authorized to consider the relationship of the witnesses to the parties; their interest in the result of the suit; their apparent candor and intelligence,

and other matters of like character, so far as they were in evidence or observable from the demeanor of the witnesses upon the stand. This instruction is not obnoxious to the rule that the court shall not invade the province of the jury, as declared by the court in *Unruh* v. *State, ex rel.*, 105 Ind. 117.

In that case the condemned instruction made it the *duty* of the jury, as a matter of law, to detract from the weight of the testimony of an interested witness, while here the whole subject is committed to the judgment and discretion of the jury.

There was no error in the instructions given, and they fully covered every issue in the cause, consequently no harm resulted in rejecting those offered by appellants. The cause bears evidence of having been carefully tried upon the correct theory, and it can not be said, upon an examination of the record, that substantial justice was not done to all parties.

The judgment is affirmed.

Filed Dec. 15, 1892; petition for a rehearing overruled June 24, 1893.