## MEYER v. PLOTNER ET AL.

[No. 9,288. Filed May 31, 1916. Rehearing denied December 15, 1916. Transfer denied March 14, 1917.]

1. DRAINS.—*Lands Assessed as Benefited.*—*Right of Drainage.*— Where a tract of land was assessed for a public drain constructed under the act of 1907, Acts 1907 p. 508, §§6140 *et seq.* Burns 1914, the fact that a part of such land is on the opposite side of a water-shed from that of the public drain for which it was assessed and naturally drained in an opposite direction, or that the tract might be drained in another direction, or that the drainage of the land into the public drain would crowd the capacity thereof so as to cause it to overflow at certain seasons of the year, is not sufficient to deprive the owner of such land of the right to construct a private drain connecting with the public ditch so as to provide drainage for the entire tract assessed as benefited. (*Drake v. Schoenstedt* [1897], 149 Ind. 90, distinguished.) pp. 77, 80.

2. DRAINS.—*Establishment.*—*Drainage Commissioners.*—*Authority.*—The question as to whether a proposed drainage project is more comprehensive, or embraces and affects more lands, than is necessary to accomplish the drainage of the petitioner's lands, in the cheapest and best manner, is left to the exclusive judgment of the drainage commissioners, and their determination of that subject is not reviewable by the courts. p. 80.

From Cass Circuit Court; *John S. Lairy,* Judge.

Action by Henry Meyer against Joseph Plotner and others. From a judgment for defendants, the plaintiff appeals. *Affirmed.*

*Long, Yarlott & Souder* and *James S. Dodge,* for appellant.

*F. M. Trissal, George W. Walters* and *Funk & Hillis,* for appellees.

MORAN, J.—Appellant sought to enjoin appellees from constructing a contemplated tile ditch upon the land of appellee Rosa Plotner, which would drain a portion of the same land that lay on the opposite side of a ridge or water-shed from that naturally drained by a public drain, into which the tile drain would find its outlet.

Briefly, the theory of appellant's complaint is that a portion of appellee Rosa Plotner's land intended to be drained by a proposed tile drain did not lie in the drainage area of the Meyer public drain, which had theretofore been constructed, and that by so draining the portion of her land into the Meyer public drain that would not naturally drain therein, the public drain would be overtaxed, causing it to overflow, and the lands of appellant, which lie along the lower course of such public drain would be greatly injured to appellant's irreparable damage. The relief sought by appellant was denied and judgment rendered against him from which he seeks relief by review in this court.

Numerous errors are assigned, which, however, can with convenience be disposed of under the errors assigned on the court's conclusions of law rendered upon the facts specially found.

The special findings disclose, among other things, that the Meyer public drain was petitioned for by three petitioners, who alleged that their lands would be benefited by drainage, and could be best accomplished by a system of drainage designated as a main ditch and three tributaries, and to accomplish the drainage petitioned for, lands other than the petitioners' would be affected, among which were fifty-three acres of land owned by appellee Rosa Plotner; that numerous highways would

likewise be benefited, and that the work would be a work of public utility; the costs, damages and expenses would be less than the benefits, which would result to landowners likely to be benefited; on May 29, 1911, the report of the drainage commissioners was filed in the Cass Circuit Court, disclosing that a large body of land in Cass county would be benefited by the drainage proposed, and the total cost of the proposed improvement would be $3,170; among the lands assessed to make up this gross sum was that of appellee Rosa Plotner, assessed in two descriptions—a forty-acre tract and a thirteen-acre tract, the latter being here involved was assessed with benefits in the sum of $50; that the report of the drainage commissioners was approved, the assessment confirmed, and the drainage ordered constructed, and was thereafter constructed in accordance with the report, and appellee Rosa Plotner paid her assessment therefor; that the source of the main drain was located upon the lands of appellee Rosa Plotner, which lands were used for farming purposes, and were so located that drainage could be had only through artificial drains constructed in connection with the Meyer public drain, which runs in a southeasterly direction; the north part of the lands of appellee Rosa Plotner naturally drains to the north and northeast, while the south part naturally drains to the south; an elevation or water-shed extends across her lands in an easterly and westerly direction, which is fairly well defined throughout its course; that many years ago there was a public drain constructed north of the water-shed, known as the Rawlhausen drain, into which the real estate of appellee Rosa Plotner lying north of the water-shed could be drained, and an assessment laid against the same for the construction thereof. In 1892 appellee constructed a private drain by which a portion of her land to the north of the water-shed was drained into the Rawl-

hausen ditch. That at the time the drainage commis-
sioners examined the lands sought to be assessed for the
construction of the Meyer public drain, the lands now
sought to be drained into the same by appellee Rosa
Plotner needed additional drainage, and by cutting
through the water-shed and extending the private drain
sought to be constructed when here enjoined the lands
can be drained, as the fall is sufficient to do so; that
the Meyer drain has been sufficient except in times of
extraordinary rainfall to carry off all the water drained
into it; and if the tile drain planned to be constructed
by appellee Rosa Plotner is turned into the Meyer pub-
lic drain, it will cause it to overflow and damage appel-
lant's land.

The conclusions of law rendered on the facts found
by the court, of which the foregoing is but a brief sum-
mary, authorized appellee Rosa Plotner to drain that
portion of her land lying north of the water-shed into
the Meyer drain, which, as we have seen, has its source
south of the water-shed.

Whether appellee Rosa Plotner has such a right must
be ascertained from the construction to be given to so
much of the drainage law as is here involved,

1. viz.: Does the fact that an assessment was laid
against the entire thirteen-acre tract of land of
appellee Rosa Plotner give her a legal right to drain
that portion of the tract that lies on the other side of the
water-shed into the Meyer public drain?

Section 2 of the drainage law of 1907 (Acts 1907 p.
508, §6141 Burns 1914), in reference to what the peti-
tion for drainage shall contain, provides, among other
things, that "the petition shall describe in tracts of 40
acres according to fractions of government surveys, or
less tracts when they exist," etc. This provision of
the statute was complied with, in that the real estate of
appellee Rosa Plotner was described in the petition as a

forty-acre tract and a thirteen-acre tract. Section 3 of the act heretofore referred to (§6142 Burns 1914) of the drainage law provides that the drainage commissioners in the examination and viewing of the real estate shall ascertain whether the drainage proposed will be practicable, and when accomplished, whether it will be a work of public utility, and whether the costs, damages and expenses affecting the drainage will be less than the benefits to the owners of the lands likely to be benefited by the proposed drainage, and if so, then the drainage commissioners shall proceed and definitely determine the best and cheapest method of drainage, estimate the costs thereof, the benefits and damages, as the case may be, to each separate tract of land to be affected thereby.

Among the causes for which a landowner may remonstrate, as provided by §4 of the act heretofore referred to (§6143 Burns 1914), are that the damages to a specified tract are exorbitant; that the lands are assessed too much as compared with other lands assessed, specifying the same; that other tracts, specifying the same, are assessed too low according to the benefits received; that the lands will not be benefited to the extent of the assessment. And in the collection of the assessment, §5 of the act heretofore referred to (§6144 Burns 1914) provides that of the assessments of benefits the party charged with the execution of the work shall collect pro rata such sums of money as may be necessary therefor, not exceeding the whole benefit so adjudged against any one tract.

It will be noted that where real estate is mentioned in the statute, in the examination of the lands by the drainage commissioners, in a remonstrance against assessments, or the collection of assessments, that the statute deals with the land described as benefited. And the same is true as to the creation of the lien against

real estate, and where the land is referred to in connection with the issuing of drainage bonds.

. There is nothing in the report of the drainage commissioners, from the facts and circumstances as they existed at the time the report was made and confirmed, to disclose that the entire thirteen-acre tract was not considered as benefited. To the contrary the report of the drainage commissioners affirmatively shows that the thirteen-acre tract was considered as benefited and so assessed.

We are dealing with the drainage of land as a creature of the statute. The approval of the report of the drainage commissioners and the confirmation of the assessments created a lien against the entire tract of real estate assessed as benefited and owned by appellee Rosa Plotner. The fact that a part of her land would naturally drain in an opposite direction from that of the public drain for which she was assessed, or that she might drain the same in another direction, or that when she completes the private drain in contemplation that the additional water carried into the public drain will crowd the capacity of it so as to cause it to overflow in a certain portion of the season, is not sufficient to deprive her of the right in common with all other landowners assessed to share in the drainage.

At the time of the location and establishment of the Meyer public drain, the land appellee Rosa Plotner now seeks to drain into the same was, as is disclosed by the special finding of facts aforesaid, in need of better drainage, and which drainage can successfully be accomplished by draining the same to the south, the fall being ample and the elevation or water-shed not such as to require an unusual amount of labor is crossing the same.

The topography of the lands or the natural boundary lines as to the drainage of the lands here under con-

sideration must, under the facts here disclosed,
2.    give way to the lines created by the drainage com-
missioners.    In reference to the extent of author-
ity lodged in the drainage commissioners it has been
held that: "Whether the project was more comprehen-
sive, or whether it embraced and affected more lands,
than was necessary in order to accomplish the drainage
of the petitioner's lands, in the cheapest and best man-
ner, was a subject for the exclusive judgment of the
commissioners of drainage.    Their determination of
that subject was not reviewable by the court."    *Heick*
v. *Voight* (1887), 110 Ind. 279, 11 N. E. 306;
*Anderson* v. *Baker* (1884), 98 Ind. 587; *Meranda* v.
*Spurlin* (1885), 100 Ind. 380.

In *Drake* v. *Schoenstedt* (1897), 149 Ind. 90, 48 N.
E. 629, on which appellant principally relies, injunctive
relief was granted to prevent the construction of
1.    a contemplated private drain from being turned
into a public drain.    The facts in that case dis-
close that appellant owned thirty acres of land immedi-
ately south of a forty-acre tract owned by appellee.    A
public drain was constructed; its source was on appel-
lee's forty-acre tract, and close to the south line, and
from this point it ran in a southerly direction crossing
appellant's thirty-acre tract, and found its outlet in
another drain in the neighborhood.    Appellant's thirty-
acre tract was estimated as benefited and the whole
thereof was assessed; two acres of appellee's land
around the source of the drain only were estimated as
benefited, but the whole forty-acre tract was assessed.
The two acres estimated as benefited naturally drained
therein and by a private drain appellee was attempting
to drain a distant part of the forty-acre tract into the
public drain; that part of the forty-acre tract sought to
be drained in this manner naturally drained in another
direction, and the public drain would be overtaxed

thereby to appellant's injury. This the court held appellee could not do and, in so holding, made use of the following language: "A large ditch was not here constructed of a capacity to receive lateral ditches to drain appellee's whole forty acres; but merely a six-inch tile drain was laid, sufficient only to receive the waters that naturally flowed from two acres of appellee's land and the thirty acres of appellant's. It would, therefore, be manifestly inequitable now to allow him to turn from their natural course into this small drain all the waters on his forty acres, and thus render the tile insufficient for the drainage of the land of appellant."

This decision was rendered while the drainage law of 1881 was in force, which provides, among other things, as to the description of real estate that the same should be accurately described as it appeared upon the tax duplicate as to each parcel of land to be assessed for the construction of the drain giving *the number of acres in each tract assessed, and the estimated number of acres benefited.* (Our italics). There is nothing in the statute under consideration in this cause that requires that the estimated number of acres benefited be set forth in the report of the drainage commissioners as distinguished from the number of acres assessed, as the statute provides that the drainage commissioners should "assess the benefits or damage as the case may be to each separate tract of land to be affected thereby". In this cause, as we have seen, appellee's separate tract of thirteen acres was assessed as benefited. The language of the statute here under consideration being different from the statute construed in *Drake* v. *Schoenstedt, supra,* that case is readily distinguished from the case at bar, and is therefore not controlling. The report of the drainage commissioners discloses that the lands

were personally inspected and the benefits assessed to the several tracts of land as described.

It was held in *Young* v. *Gentis* (1893), 7 Ind. App. 199, 32 N. E. 796, in an action by a landowner whose lands were damaged by an unlawful diversion of a large quantity of water from its natural course into a public drain that: "Water falling or flowing by natural means upon lands assessed for the construction of a public ditch may be conducted into such ditch by means of lateral aqueducts, but this right does not extend to lands not assessed. Nor may one whose land has been assessed collect thereon by artificial means water from lands not assessed and discharge such water in any considerable quantities into the public ditch."

In *Williams* v. *Osborne* (1913), 181 Ind. 670, 104 N. E. 27, it was held that, where a new drain followed in part the course of a public drain theretofore established, a failure to assess a part of the land for the construction of the new drain originally assessed for the old drain did not affect the right of such parties to drain their lands therein. It was said: "Here we have a case of lands originally assessed, under which they acquired a right of drainage, and the presumption is, that by not being again assessed, they were not benefited by the increase in the size of the drain, and those which needed a larger drain should be assessed for it, but the drain is there for all such drainage of appellant's lands as they may require, within the assessed area." It was further held in this same connection that after a public drain is established and constructed it is impressed with private rights in the nature of a perpetual easement as to the lands assessed.

Appellee's entire thirteen-acre tract of real estate is within the assessed area and was assessed as benefited for the construction of the Meyer public drain, and under the facts as they come to us in this cause ap-

pellee is entitled to drain this tract of real estate by lateral drains in the manner sought.

There is no error in the record calling for a reversal. Judgment affirmed.

NOTE.—Reported in 112 N. E. 901. Drains: lands subject to inclusion in a drainage district, Ann. Cas. 1915C 14. See under (2) 14 Cyc 1045.